IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DESIROUS PARTIES UNLIMITED, §
INC., §
§
Plaintiff, §
§
v. §        CIVIL ACTION NO. H-21-0470
§
RIGHT CONNECTION, INC. and §
DON HUGHES, §
§
Defendants. §


## MEMORANDUM OPINION AND ORDER


Plaintiff, Desirous Parties Unlimited, Inc. ("Plaintiff"),
filed this action on February 10, 2021, against defendants Don
Hughes and Right Connection, Inc. ("Right Connection")
(collectively, "Defendants"), asserting claims for (1) trademark
infringement under 15 U.S.C. § 1114, (2) common law trademark
infringement, (3) unfair competition under 15 U.S.C. § 1125(a),
(4) breach of contract, (5) intentional interference with
prospective economic advantage, (6) declaratory relief on its
trademark claim, and (7) injunctive relief as to use of the
disputed trademark.[1]   Pending before the court is Defendants'

---

[1]Complaint for Damages ("Complaint"), Docket Entry No. 1,
pp. 5-8 ¶¶ 24-55.   All page numbers for docket entries in the
record refer to the pagination inserted at the top of the page by
the court's electronic filing system, CM/ECF.

Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue ("Defendants' Motion to Dismiss") (Docket Entry No. 13), to which Plaintiff filed Plaintiff Desirous Parties Unlimited, Inc.'s Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue; Memorandum of Points and Authorities ("Plaintiff's Opposition") (Docket Entry No. 14). For the reasons stated below, Defendants' Motion to Dismiss will be granted.

## I. Factual Allegations and Procedural Background

Plaintiff is a Texas corporation that specializes in organizing, conducting, and arranging adult oriented entertainment events, including but not limited to nightclub events and destination travel packages (collectively, the "Services").[2] Right Connection is a Nevada corporation with its principal place of business in Las Vegas, Nevada.[3] Plaintiff asserts that Hughes owns and operates Right Connection.[4] Defendants deny this,[5] but

---

[2]Id. at 2-3 ¶¶ 5, 8-9.

[3]Id. at 2 ¶ 6.

[4]Id. ¶ 7.

[5]See Defendants' Reply Memorandum of Law in Support of Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue ("Defendants' Reply"), Docket Entry No. 16, p. 9 ("Mr. Hughes is not 'the owner' of Right Connection. . . . Mr. Hughes simply does not 'operate, supervise, and direct' Right Connection's activities.").

acknowledge that Hughes is the Vice President of Right Connection.[6] Hughes resides in the Phoenix, Arizona, metropolitan area.[7]

Plaintiff owns United States federal trademark registration number 6068727 for the trademark "DIRTY VIBES" (the "Registered Mark").[8] Plaintiff alleges that it has used the Registered Mark continuously in connection with the Services since November of 2017.[9] Right Connection disputes Plaintiff's ownership of the Registered Mark.[10] Right Connection asserts that it created and owns the Registered Mark and that Plaintiff improperly obtained its federal trademark registration by means of fraud.[11]

In 2017 Plaintiff solicited Hughes about doing business with Right Connection.[12] Plaintiff alleges that it reached an oral agreement with Defendants whereby Plaintiff would use Right

---

[6]Defendants' Memorandum of Law in Support of Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue ("Defendants' Memo"), attached to Defendants' Motion to Dismiss, Docket Entry No. 13-1, p. 23 n.5.

[7]Complaint, Docket Entry No. 1, p. 2 ¶ 7; Defendants' Memo, attached to Defendants' Motion to Dismiss, Docket Entry No. 13-1, p. 27.

[8]See Filing Receipt for Section 7 Request for Amendment or Correction of Registration Certificate Form and Next Steps, Exhibit A to Complaint, Docket Entry No. 1-1, pp. 2, 8.

[9]See Complaint, Docket Entry No. 1, p. 3 ¶¶ 10-11.

[10]Defendants' Memo, Docket Entry No. 13-1, p. 8.

[11]Id.

[12]Complaint, Docket Entry No. 1, p. 3 ¶ 14; Declaration of Donald Dale Hughes II in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue ("Hughes Declaration"), Exhibit B to Defendants' Motion to Dismiss, Docket Entry No. 13-4, pp. 3-4 ¶¶ 12-18.

Connection as the booking agent for certain travel events promoted by Plaintiff under its "Desirous Party" brand and/or the Registered Mark, and the parties would split the profits evenly (the "Agreement").[13] Plaintiff alleges that "Defendants failed to properly and fully account to Plaintiff, and [that] they underpaid Plaintiff for Plaintiff's share of proceeds in connection with the first five (5) Travel Events under the Agreement."[14] Plaintiff also alleges that when Hughes learned that Plaintiff had secured the Registered Mark, he demanded that Plaintiff turn over rights to the Registered Mark to Defendants, threatened to withhold payments for an October 2020 Travel Event organized by Plaintiff under the Agreement, and threatened to "shut Plaintiff out of" a scheduled April 2021 event.[15] Plaintiff alleges that as a result of this dispute, it terminated its relationship with Defendants, demanded that Defendants cease and desist from any future use of the Registered Mark, and asked Defendants for an accounting and payment of funds under the Agreement.[16] Defendants continue to advertise events under the "Dirty Vibes" brand, and they have registered the website "dirty-vibes.com" for that purpose.[17]

---

[13]Complaint, Docket Entry No. 1, p. 3 ¶¶ 13-14.

[14]Id. at 4 ¶ 17.

[15]Id. ¶ 19.

[16]Id. ¶ 20.

[17]Id. ¶ 21; Defendants' Memo, attached to Defendants' Motion to Dismiss, Docket Entry No. 13-1, p. 21.

Plaintiff also alleges that Defendants have "interfered with Plaintiff's business and economic opportunities" by approaching Plaintiff's clients and making "disparaging and defamatory comments about Plaintiff and its owner in order to harm Plaintiff."[18] Plaintiff alleges that Defendants have "tried to take Plaintiff's current clients and potential clients for future events, and [that] they have interfered with Plaintiff's prospects for hotel partnerships for future travel events."[19]

## II. Motion to Dismiss for Lack of Personal Jurisdiction

### A. Standard of Review

Dismissal for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper.'" Id. at 343-344 (quoting Wilson v. Belin, 20 F.3d 644,

---

[18]Complaint, Docket Entry No. 1, p. 4 ¶ 23.

[19]Id. at 4-5 ¶ 23.

-5-

648 (5th Cir.), <u>cert. denied</u>, 115 S. Ct. 322 (1994)). "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" <u>Id.</u> at 344 (quoting <u>Thompson v. Chrysler Motors Corp.</u>, 755 F.2d 1162, 1165 (5th Cir. 1985)). The court must accept as true the uncontroverted allegations in the plaintiff's complaint and must resolve any factual conflict in favor of the plaintiff. <u>Guidry v. United States Tobacco Co., Inc.</u>, 188 F.3d 619, 625 (5th Cir. 1999). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. <u>Panda Brandywine Corp. v. Potomac Electric Power Co.</u>, 253 F.3d 865, 869 (5th Cir. 2001). "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined . . . by th[e] Court." <u>Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.</u>, 9 F.3d 415, 418 (5th Cir. 1993).

B.   Applicable Law

"A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." <u>McFadin v. Gerber</u>, 587 F.3d 753, 759 (5th Cir. 2009), <u>cert. denied</u>, 131 S. Ct. 68 (2010).

Since the Texas long-arm statute extends as far as constitutional due process allows, the court considers only the second step of the inquiry. <u>Id.</u>

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement</u>, 66 S. Ct. 154, 158 (1945) (quoting <u>Milliken v. Meyer</u>, 61 S. Ct. 339, 343 (1940)). Once a plaintiff satisfies these two requirements, a presumption arises that jurisdiction is reasonable, and the burden of proof and persuasion shifts to the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Burger King Corp. v. Rudzewicz</u>, 105 S. Ct. 2174, 2185 (1985). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" <u>McFadin</u>, 587 F.3d at 759 (quoting <u>Luv N' Care, Limited v. Insta-Mix, Inc.</u>, 438 F.3d 465, 470 (5th Cir. 2006)). "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." <u>Lewis v. Fresne</u>, 252 F.3d 352, 358 (5th Cir. 2001).

1.   General Jurisdiction

A court may exercise general jurisdiction over non-resident defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). "Establishing general jurisdiction is 'difficult' and requires 'extensive contacts between a defendant and a forum.'" Sangha v. Navig8 ShipManagement Private Limited, 882 F.3d 96, 101-02 (5th Cir. 2018) (quoting Johnston v. Multidata Systems International Corp., 523 F.3d 602, 609 (5th Cir. 2008)). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . . ." Revell v. Lidov, 317 F.3d 467, 471 (5th Cir. 2002) (citing Access Telecom, Inc. v. MCI Telecommunications Corp., 197 F.3d 694, 717 (5th Cir. 1999)).

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014) (quoting Goodyear, 131 S. Ct. at 2853). "The 'paradigm' forums in which a corporate defendant is 'at home,'. . . are the corporation's place of incorporation and its principal place of business." BNSF Railway Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017) (citing Daimler, 134 S. Ct. at 760). "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in

-8-

another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" Id. (quoting Daimler, 134 S. Ct. at 761 n.19). But asserting that exceptional case is "incredibly difficult." Monkton Insurance Services, Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014). "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." Johnston, 523 F.3d at 610 (citing Gardemal v. Westin Hotel Co., 186 F.3d 588, 596 (5th Cir. 1999)).

2.   Specific Jurisdiction

A court may exercise specific jurisdiction when the alleged injuries arise from or are directly related to the nonresident defendant's contacts with the forum state. Gundle Lining Construction Corp. v. Adams County Asphalt, Inc., 85 F.3d 201, 205 (5th Cir. 1996) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984); and Quick Technologies, 313 F.3d at 344). To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." Gundle Lining, 85 F.3d at 205 (internal citation omitted). Even a single contact can support specific jurisdiction if the defendant "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King, 105 S. Ct. at

2183 (quoting <u>Hanson v. Denckla</u>, 78 S. Ct. 1228, 1240 (1958)).
"The non-resident's 'purposeful availment' must be such that the
defendant 'should reasonably anticipate being haled into court' in
the forum state." <u>Ruston Gas</u>, 9 F.3d at 419 (citing <u>World-Wide
Volkswagen Corp. v. Woodson</u>, 100 S. Ct. 559, 567 (1980)).

"[T]here are three parts to a 'purposeful availment' inquiry."
<u>Moki Mac River Expeditions v. Drugg</u>, 221 S.W.3d 569, 575 (Tex.
2007) (citing <u>Michiana Easy Livin' Country, Inc. v. Holten</u>, 168
S.W.3d 777, 784-85 (Tex. 2005)).  First, the only relevant contacts
with the forum are the defendant's — the contacts of a plaintiff
or a third party with the forum State cannot demonstrate the
defendant's purposeful availment.  <u>Sangha</u>, 882 F.3d at 103 (citing
<u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1122 (2014) ("We have
consistently rejected attempts to satisfy the defendant-focused
'minimum contacts' inquiry by demonstrating contacts between the
plaintiff (or third parties) and the forum State.")).  Second, the
contacts relied upon must be purposeful rather than random,
fortuitous, or attenuated.  <u>Id.</u> (citing <u>Walden</u>, 134 S. Ct. at
1123).  Finally, the defendant must seek some benefit, advantage,
or profit by availing itself of the jurisdiction.  <u>See Burger King</u>,
105 S. Ct. at 2183 ("[W]here individuals purposefully derive
benefit from their interstate activities, it may well be unfair to
allow them to escape having to account in other States for
consequences that arise proximately from such activities . . . .")
(internal quotations omitted).  Since specific jurisdiction is

claim specific, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." <u>Seiferth v. Helicopteros Atuneros, Inc.</u>, 472 F.3d 266, 274 (5th Cir. 2006).

## C.  Analysis

### 1.  General Jurisdiction

Defendants argue that the court lacks general jurisdiction over Hughes because he is not domiciled in Texas and has not engaged in any activities that "directly targeted Texas;"[20] and that the court lacks general jurisdiction over Right Connection because it is incorporated in Nevada, has its principal places of business in Las Vegas, Nevada, and does not have continuous and systematic contacts in Texas that render it "at home" in Texas.[21] Plaintiff responds that the court has general jurisdiction over Hughes because Hughes "has directed all of [Right Connection's] contacts and efforts in Texas[,]"[22] and that the court has general jurisdiction over Right Connection because it "operates websites in Texas residents [sic], worked with a Texas corporation [(Plaintiff)], aimed its sale activities in Texas, and benefited from sales from Texas . . . ."[23]

---

[20]Defendants' Memo, attached to Defendants' Motion to Dismiss, Docket Entry No. 13-1, p. 9.

[21]<u>Id.</u> at 13.

[22]Plaintiff's Opposition, Docket Entry No. 14, p. 19.

[23]<u>Id.</u> lines 10-12.

Defendants deny that Hughes directs Right Connection's Texas operations.[24] Defendants offer as evidence the declaration of Right Connection's president, James Terhune, who states that Hughes owns only a minority percentage of Right Connection's issued shares, has never been the president of Right Connection, did not register or direct the registration of any of the domain names for Right Connection's websites, and does not manage or control the Right Connection websites.[25] Plaintiff cites the sworn affidavit of its CEO and founder, David Matlock, who states that "Hughes directs and controls every action of [Right Connection] and handles all the day-to-day operations."[26] The court must resolve factual controversies in Plaintiff's favor.[27] See Guidry, 188 F.3d at 625.

---

[24]Defendants' Reply, Docket Entry No. 16, p. 9.

[25]Supplemental Declaration of James Terhune in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue, Exhibit M to Defendants' Reply, Docket Entry No. 16-2, pp. 3-4 ¶¶ 3-10.

[26]Declaration of David Matlock in Support of Plaintiff Desirous Parties Unlimited, Inc.'s Opposition to Defendants' Motion to Dismiss ("Matlock Declaration"), attached to Plaintiff's Opposition, Docket Entry No. 14-1, p. 3 ¶ 10.

[27]Defendants object to Mr. Matlock's testimony concerning Hughes's role in Right Connection, arguing that the testimony is "inadmissible because it lacks foundation and is speculation." (Plaintiff Desirous Parties Unlimited, Inc.'s Opposition to Defendant's Objections to Plaintiff's Evidence Submitted in Opposition to Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue, Docket Entry No. 17, p. 4) Plaintiff responds that the testimony is admissible because Mr. Matlock has personal knowledge of the facts to which he has testified, and evidence to prove personal knowledge may consist of the witness's own testimony. (Id. at 3-4.) Based on Fed. R. Evid. 602 and 701, the court is persuaded by Plaintiff's argument and will admit
(continued...)

-12-

But even if Hughes is or was the director of Right Connection's Texas operations, and even if Right Connection had sufficient contacts with Texas for this court to assert general jurisdiction over it, Plaintiff cites no authority to support its argument that Right Connection's jurisdictional contacts could be imputed to Hughes. Because Texas is not Hughes's domicile and because Plaintiff does not show "the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction[,]" see Revell, 317 F.3d at 471, the court concludes that Plaintiff has not met its burden to establish that the court has general jurisdiction over Hughes.

Because Right Connection's place of incorporation and principal place of business are in Nevada,[28] general jurisdiction can exist only if the facts establish an "exceptional case." See BNSF, 137 S. Ct. at 1558; Patterson v. Aker Solutions Incorporated, 826 F.3d 231, 234 (5th Cir. 2016). Plaintiff has not presented such facts. Plaintiff argues that Right Connection has continuous and systematic contacts with Texas because Right Connection partnered with Plaintiff, a Texas-based corporation, for the past four years selling travel services to Texas residents.[29]   But

---

[27](...continued)
Mr. Matlock's testimony.  The court does not need to rule on Defendants' other evidentiary objections and therefore will not do so.

[28]Complaint, Docket Entry No. 1, p. 2 ¶ 6.

[29]Plaintiff's Opposition, Docket Entry No. 14, p. 18.

-13-

entering into a contract with a Texas resident and selling services to Texas customers is not enough to establish general jurisdiction. See Johnston, 523 F.3d at 611 (defendant sold goods and related service contracts to Texas customers, but its contacts were still "too limited and sporadic to give rise to general jurisdiction"). Plaintiff argues that it and Right Connection's sales have "largely been aimed at Texas residents[,]"[30] but cites no supporting evidence. Plaintiff asserts that "[Right Connection] has physically gone to Houston[,] Texas[,] to promote their services at Plaintiff's events[,]"[31] but does not specify the nature, duration, or frequency of these alleged visits. Occasional travel to a forum State is a far cry from the continuous and systematic contact necessary to create general jurisdiction. See Johnston, 523 F.3d at 612 (holding that "employees' occasional travels to Texas to service equipment or attend trade conventions" was not sufficient to justify the exercise of general jurisdiction).

Plaintiff argues that the court has general jurisdiction over Right Connection because Right Connection operates websites that are available to Texas residents.[32] Defendants assert, and Plaintiff does not deny, that Right Connection's websites are accessible by anyone with an Internet connection.[33] But if

---

[30]Id. at 18-19.

[31]Id. at 19.

[32]Id.

[33]Defendants' Memo, attached to Defendants' Motion to Dismiss, Docket Entry No. 13-1, p. 10.

operating such a website were enough to subject Right Connection to general jurisdiction in Texas, it would also be enough to render Right Connection "essentially at home" in every forum. Federal courts do not accept this reasoning. See Revell, 317 F.3d at 471 ("Though the maintenance of a website is, in a sense, a continuous presence everywhere in the world, the cited contacts of Columbia with Texas are not in any way 'substantial.'"); Monkton, 768 F.3d at 432 ("In this case, at most, Butterfield's website shows that Butterfield conducts business with Texas, not in Texas.") (emphasis added). The general jurisdiction inquiry "calls for an appraisal of a corporation's activities in their entirety." Daimler, 134 S. Ct. at 762 n.20. Plaintiff has not alleged facts that establish that Right Connection's contacts in Texas are so substantial and of such nature as to render the corporation at home in Texas. Id. at 761 n.19. The court concludes that this is not the exceptional case that would allow the court to exercise general jurisdiction over Right Connection in a forum that is not its place of incorporation or principal place of business.

2. Specific Jurisdiction

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear, 131 S. Ct. at 2851 (citations and quotations omitted). Plaintiff's claims fall into three

categories: trademark claims (the first, second, third, sixth, and seventh causes of action); a breach of contract claim (the fourth cause of action); and an intentional interference with prospective economic advantage claim (the fifth cause of action).[34] Plaintiff must establish that Right Connection and Hughes are subject to personal jurisdiction in Texas for each of these claims. See Seiferth, 472 F.3d at 274 (5th Cir. 2006).

            a. No Specific Jurisdiction Over Trademark Claims

Plaintiff alleges that Defendants have "used the Registered Mark in a manner that infringes on Plaintiff's rights, and such use will and has caused actual confusion, mistake, or deception in violation of 15 U.S.C. § 1114[;]"[35] that Defendants have "unlawfully profited" from the use of the Registered Mark;[36] and that Defendants' "commercial advertising and promotion of its events using the Registered Mark misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods and services in violation of 15 U.S.C. § 1125(a)."[37] All of these claims fall within the category of "trademark claims."

Plaintiff asserts three factual bases for personal jurisdiction over Defendants with regard to the trademark claims:

---

[34]Plaintiff's Opposition, Docket Entry No. 14, p. 15.

[35]Complaint, Docket Entry No. 1, p. 5 ¶ 26.

[36]Id. at 6 ¶ 33.

[37]Id. ¶ 36.

(1) Defendants visited Plaintiff's annual events in Houston, Texas, to promote and sell Right Connection travel events,[38] (2) Right Connection operates the website "dirty-vibes.com" to advertise events that compete with Plaintiff's,[39] and (3) Right Connection sends promotional materials about the events to Texas customers via email.[40]

Plaintiff does not allege that Defendants infringed on the Registered Mark at the events in Houston. The Houston events took place in 2018 and 2019[41] — before Plaintiff and Defendants terminated their partnership in or after October of 2020.[42] At that time, Plaintiff and Defendants were producing and hosting events together using the Registered Mark per the Agreement. Therefore, Defendants' presence at these events is not connected with the trademark controversy, and cannot establish specific jurisdiction as to the trademark claim. See Goodyear, 131 S. Ct. at 2851.

---

[38]Plaintiff's Opposition, Docket Entry No. 14, p. 13.

[39]Id. at 7 ("Defendants are also operating a fake website based on Plaintiff's website in violation of Plaintiff's copyright and trademarks, targeting and stealing Plaintiff's clients by posing as Plaintiff's legitimate website.").

[40]Id. at 13.

[41]Id.

[42]Plaintiff asserts that its claim arises out of a "former partnership" with Defendants (Complaint, Docket Entry No. 1, p. 1 ¶ 1) and that Plaintiff terminated the partnership when Hughes "threatened to withhold payments for the October 2020 event . . . ." (Id. at 4 ¶¶ 19-21.) The court therefore concludes that the parties' partnership lasted at least until October of 2020.

The remaining bases for jurisdiction on the trademark claims concern Defendants' use of the Internet to promote events under the Registered Mark. Plaintiff does not allege that the events themselves occurred in Texas, and Defendants assert and Plaintiff does not deny that all of the events marketed under the Registered Mark occurred in Mexico.[43] Plaintiff must show that by operating the "dirty-vibes.com" website and sending promotional emails, Defendants purposefully availed themselves of the privilege of conducting activities within Texas, thus invoking the benefits and protections of Texas law. See Burger King, 105 S. Ct. at 2183.

To determine whether personal jurisdiction can be exercised over a defendant based on its Internet presence, the Fifth Circuit follows the approach developed in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). See Mink, 190 F.3d at 336.

> The Zippo decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet. In this situation, personal jurisdiction is proper. At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the

_____

[43]Defendants' Memo, attached to Defendants' Motion to Dismiss, Docket Entry No. 13-1, p. 8 ("The Dirty Vibes trademark is used as a name to describe certain events that occur at resorts located in Mexico."); Plaintiff's Opposition, Docket Entry No. 14, p. 13 ("Defendants do not even dispute that sale of the trips occurs in Texas. They simply insist that since the trips occur in Mexico or other parts outside of Texas, they have no connection to Texas.").

> Internet. With passive websites, personal jurisdiction
> is not appropriate. In the middle of the spectrum, there
> are situations where a defendant has a website that
> allows a user to exchange information with a host
> computer. In this middle ground, the exercise of
> jurisdiction is determined by the level of interactivity
> and commercial nature of the exchange of information that
> occurs on the Website.

Id. (internal citations and quotations omitted). The defendant's

website in Mink provided users with a printable mail-in order form,

the defendant's toll-free phone number, a mailing address and an

email address, but users did not place orders through the website.

Id. at 337. The Fifth Circuit held that the website was nothing

more than a "passive advertisement[,] which is not grounds for the

exercise of personal jurisdiction." Id. See also Quick

Technologies, 313 F.3d at 345 (foreign company's operation of

website containing company and product information and links to its

U.S. subsidiaries did not provide sufficient grounds for the

exercise of personal jurisdiction in trademark infringement

action).

Defendants argue that the "dirty-vibes.com" website is passive

on the Zippo scale.[44] They assert that a person who views one of

Right Connection's websites and is interested in making a

reservation for one of the trips offered by Right Connection can

click on a link that will redirect the user to an external website

operated by Right Connection, and from there the user can make his

---

[44]Defendants' Memo, attached to Defendants' Motion to Dismiss,
Docket Entry No. 13-1, p. 17.

or her reservation.[45]  To do this the user must set up an account, username, and password with Right Connection.[46]  In other words, actually booking travel requires substantial affirmative action on the user's part.  The user does not actually receive the travel services advertised by Right Connection and does not finally pay in full for those services until the user travels to his or her final destination.[47]  Plaintiff does not dispute these facts. Accordingly, the court concludes that Right Connection's website belongs on the "passive" end of the Zippo scale.

Moreover, as explained above, Right Connection's website is available throughout the United States and does not target Texas residents.  These facts persuade the court that Right Connection's operation of the "dirty-vibes.com" website does not constitute purposeful availment of the benefits of doing business in Texas, and thus does not establish personal jurisdiction.  See Quick Technologies, 313 F.3d at 345; see also Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 228 (5th Cir. 2012) ("Website interactivity is important only insofar as it reflects commercial activity, and then only insofar as that commercial activity

_____

[45]Declaration of James Terhune in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue ("Terhune Declaration"), Exhibit A to Defendants' Memo, Docket Entry No. 13-3, p. 4 ¶ 15.

[46]Defendants' Memo, attached to Defendants' Motion to Dismiss, Docket Entry No. 13-1, pp. 15-16.

[47]Terhune Declaration, Exhibit A to Defendants' Memo, Docket Entry No. 13-3, p. 4 ¶ 18.

demonstrates purposeful targeting of residents of the forum state or purposeful availment of the benefits or privileges of the forum state."); Arriaga v. Imperial Palace, Inc., 252 F. Supp. 2d 380, 386 (S.D. Tex. 2003) (finding no personal jurisdiction because defendant "takes no deliberate action in Texas: it simply makes its web site available nationwide. Further, when a patron makes a reservation on [the site], services are not provided and payment is not made until the person reaches [his or her destination].").

The promotional emails sent by Right Connection fail to establish personal jurisdiction for the same reason: Plaintiff has not shown that these emails were targeted specifically at Texas residents or that they rise above the level of passive advertisements. Defendants assert and Plaintiff does not deny that Right Connection sends emails to all persons in its customer database, which includes over 50,000 entries, not just Texas residents.[48] Plaintiff states that it "estimates" that 70% of Right Connection's email contacts are Texas residents,[49] but Defendants deny this,[50] and the only source that Plaintiff cites does not actually support it.[51] Even if most of Right Connection's customers

_____

[48]Defendants' Reply, Docket Entry No. 16, p. 5.

[49]Plaintiff's Opposition, Docket Entry No. 14, p. 13.

[50]Defendants' Reply, Docket Entry No. 16, p. 5 n.8.

[51]See Matlock Declaration, attached to Plaintiff's Opposition, Docket Entry No. 14-1, pp. 2-3 ¶ 6 (Plaintiff cites this document to support its "70%" estimate, but the paragraph actually says that the majority of Plaintiff's clients were Texas residents and does
(continued...)

were Texas residents, sending a mass email to all of them would not be enough on its own to demonstrate purposeful availment. Although Plaintiff attempts to show that the emails are more than passive advertisements by pointing out that the emails contain links to the "dirty-vibes.com" website,[52] the court has concluded that this website is itself passive. Providing a link to the site is therefore insufficient to create jurisdiction.

Plaintiff has not demonstrated that Right Connection's website or emails are targeted at Texas residents or that they rise above mere advertisement. See <u>Pervasive Software</u>, 688 F.3d at 228 (finding no personal jurisdiction where defendant "solicits no business . . . through advertising targeted specifically to Texas"); <u>Quick Technologies</u>, 313 F.3d at 345 (mere advertisements containing an allegedly infringing trademark did not provide a basis for personal jurisdiction); <u>Mink</u>, 190 F.3d at 337 (passive advertisement and website were not sufficient for personal jurisdiction). The court concludes that it lacks specific jurisdiction over Defendants with respect to Plaintiff's trademark claims.

b. No Specific Jurisdiction Over Contract Claims

Plaintiff alleges that Defendants breached the Agreement by "refus[ing] to provide Plaintiff with accurate accounting and

_____

[51](...continued)
not indicate how Plaintiff could know what percentage of Defendants' clients are Texas residents).

[52]Plaintiff's Opposition, Docket Entry No. 14, p. 13.

profits from 5 events . . . ."[53]  The Fifth Circuit looks to the law governing the contract, the place of contracting, and the place of performance to determine whether the making of a contract with a Texas resident is sufficiently purposeful to satisfy minimum contacts.  Jones v. Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061, 1068-69 (5th Cir. 1992).  Of these factors, the place of contractual performance is often the touchstone.  See, e.g., Patterson v. Dietze, Inc., 764 F.2d 1145, 1147 (5th Cir. 1985) (no personal jurisdiction over a contract claim where "all material performance occurred in Mexico"); Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986) (no personal jurisdiction over a contract claim where "performance of the contract was centered in Oklahoma rather than Texas."); Sayers Construction, L.L.C. v. Timberline Construction, Inc., 976 F.3d 570, 573 (5th Cir. 2020) (no personal jurisdiction over a contract claim where "the place of contractual performance was Florida — not Texas").

Defendants state, and Plaintiff does not deny, that Plaintiff solicited Right Connection in Mexico for the Agreement.[54]  Mexico is thus the place of contracting.  Neither party asserts that it ever specified which forum's law was to govern the Agreement, and there is no written contract for the court to examine.  The court will therefore disregard that factor.  Defendants assert and

---

[53]Id. at 16.

[54]Defendants' Memo, attached to Defendants' Motion to Dismiss, Docket Entry No. 13-1, p. 23.

Plaintiff does not dispute that all of the events for which Plaintiff was allegedly underpaid took place in Mexico.[55]

Plaintiff disputes that the contract was to be performed in Mexico, asserting instead that "[a]ll the contract required was that Plaintiff and [Right Connection] work together to set up events, promote the events, and sell those events."[56] But the fact that the Agreement did not explicitly specify where performance would take place does not establish that performance was to take place in Texas, and thus does not help Plaintiff establish personal jurisdiction over Defendants in Texas. See, e.g., International Energy Ventures Management, L.L.C. v. United Energy Group, Ltd., 818 F.3d 193, 213 (5th Cir. 2016) (holding that defendant company "had no presence in Texas" in part because "the unwritten agreement did not require performance in Texas").

Plaintiff argues that the contract was performed in Texas because, per the Agreement, "Plaintiff . . . sold events to Texas residents" and Right Connection "provide[d] booking services and provide[d] Plaintiff, a Texas corporation, 50% of profits."[57] But the fact that Plaintiff sold services to Texas residents cannot justify the exercise of personal jurisdiction over Defendants. See Fiore, 134 S. Ct. at 1122. Defendants may have contemplated that,

_____

[55]Id. at 8.

[56]Plaintiff's Opposition, Docket Entry No. 14, p. 16.

[57]Id.

-24-

under the Agreement, Plaintiff would sell the Services to Texas residents; but Plaintiff does not allege and the record does not suggest that the Agreement contemplated selling the Services to Texas residents exclusively or Texas residents in particular. Even if Plaintiff were alleging that Defendants sold services to Texas residents, selling goods or services to forum residents does not necessarily establish personal jurisdiction in a breach of contract case. See, e.g., Loumar, Inc. v. Smith, 698 F.2d 759 (5th Cir. 1983) (nonresident defendant not subject to personal jurisdiction of Texas court although it sold and shipped to Texas plaintiff goods that were the subject of the breach of contract claim). Contracting with a forum resident also does not establish personal jurisdiction. See Moncrief Oil International Inc. v. OAO Gazprom, 481 F.3d 309, 311 (5th Cir. 2007) ("[M]erely contracting with a resident of the forum state does not establish minimum contacts.") (internal citations omitted). Sending payments to a forum resident does not establish personal jurisdiction. See Jones v. Artists Rights Enforcement Corporation, 789 F. App'x 423, 426 (5th Cir. 2019) ("The payments were sent to Louisiana only because Johnson resided there, which fails to establish purposeful minimum contacts."); Stuart v. Spademan, 772 F.2d 1185, 1193 (5th Cir. 1985) ("Spademan's mailing of payments to the plaintiffs in Texas can hardly be termed significant in terms of determining purposeful availment of the benefits of the forum state's laws."). The court concludes that Defendants' little contact with Texas came only from

-25-

the fortuity of Plaintiff's residence there. See McFadin, 587 F.3d at 761.

The profits that Defendants allegedly failed to split with Plaintiff were derived, essentially, from the sale of trips to Mexico. Customers did not pay in full for their travel until they reached their final destination in Mexico.[58] And as explained above, Mexico was the place of contracting. Considering all of these factors, the court cannot assert specific personal jurisdiction over Defendants for Plaintiff's breach of contract claim.

      c.   No Specific Jurisdiction Over Intentional Interference Claim

Plaintiff alleges that "Defendant is interfering with Plaintiff's clients by attempting to poach Plaintiff's clients."[59] Plaintiff does not specify which Defendant it means, but argues that Right Connection in particular could reasonably foresee being haled into Texas court because Right Connection "know[s] that Plaintiff was based in Texas, knew most of Plaintiff's clients were based in Texas, and that it would cause harm to Plaintiff."[60]

To support its argument Plaintiff invokes the "effects test" of Calder v. Jones, 104 S. Ct. 1482, 1486-87 (1984) (holding defendant subject to personal jurisdiction in California based on

---

[58]Terhune Declaration, Exhibit A to Defendants' Memo, Docket Entry No. 13-3, p. 5 ¶ 18.

[59]Plaintiff's Opposition, Docket Entry No. 14, pp. 16-17.

[60]Id. at 17.

foreseeable effects in that state of allegedly libelous conduct committed in Florida). But such "effects" jurisdiction is rare, Boyd Tech, Inc. v. Boyd Tech, Inc. (Florida), Civil Action No. H-18-0972, 2018 WL 3581709, at *8 (citing Moncrief, 481 F.3d at 314), and even if it applied here, Plaintiff would still have to show that Defendants directed specific acts towards Texas. Id. Plaintiff has not made this showing.

Plaintiff cites two exhibits to support its intentional interference claim, attached as Exhibits G and H to Plaintiff's Opposition.[61] Exhibit G consists of promotional emails that Right Connection sent, presumably to prospective clients, from January of 2019 through March of 2020.[62] Exhibit H consists of emails sent to Plaintiff by its own customers, not by Defendants, from February 18, 2021, through April 1, 2021.[63] None of these emails show that Defendants tried to "poach Plaintiff's clients[,]" because all of them were sent before the parties terminated their partnership in or after October of 2020. One of the promotional emails mentions Plaintiff by name and states that Plaintiff and Right Connection are "teaming up again" for an April 2019 event that the email refers to as "Wild On....Dirty Vibes Tower Takeover."[64] Another

---

[61]Id. at 16-17.

[62]Exhibit G to Plaintiff's Opposition, Docket Entry No. 14-9.

[63]Exhibit H to Plaintiff's Opposition, Docket Entry No. 14-10.

[64]Exhibit G to Plaintiff's Opposition, Docket Entry No. 14-9, p. 4.

email refers to an August 2019 event called "Dirty Vibes Music Fest" under a heading that reads "DesirousParty.com presents..."[65] Plaintiff alleges in its Complaint that under the Agreement it organized an April 2019 event called "Wild On Dirty Vibes" and an August 2019 event called "Dirty Vibes Music Fest."[66] It thus appears that the events being advertised in the emails were not designed by Defendants to "poach" Plaintiff's clients, but instead were events that the parties worked on together to promote per their Agreement. This evidence shows that the parties hosted events together — a fact not in dispute. It is not evidence of intentional interference with a prospective business advantage.

Moreover, none of the emails show or even suggest that Defendants directed specific acts toward Texas, which is what Plaintiff must show to establish personal jurisdiction. See Boyd, 2018 WL 3581709, at *8. Plaintiff has produced nothing of substance to support personal jurisdiction for its intentional interference claim, only conclusory allegations that the court need not credit.[67] See Panda Brandywine Corp., 253 F.3d at 869. The

---

[65]Id. at 14.

[66]Complaint, Docket Entry No. 1, p. 3 ¶ 16.

[67]The same is true of Plaintiff's assertion in its Complaint that it "has been informed that Defendants have approached Plaintiff's clients and made disparaging and defamatory comments about Plaintiff and its owner in order to harm Plaintiff." (Complaint, Docket Entry No. 1, p. 4 ¶ 23). Plaintiff does not make this argument in its Memorandum of Opposition, never explains who "informed" it that Defendants were defaming Plaintiff, and does not cite any evidence.

court concludes that it does not have personal jurisdiction over Plaintiff's intentional interference claim.

        d.   No Personal Jurisdiction Over Hughes

Plaintiff argues that specific personal jurisdiction over Hughes is proper because Hughes is the owner of Right Connection and "operates, supervises, and directs all activity of [Right Connection]."[68] The court takes Plaintiff's factual assertion about Hughes's role in Right Connection as true, but this does not necessarily mean that Right Connection's jurisdictional contacts can or should be imputed to Hughes. Under the "fiduciary-shield doctrine . . . an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual . . . ." Spademan, 772 F.2d at 1197. Therefore, to the extent that Hughes visited Texas or communicated with Plaintiff as part of any non-tortious conduct relating to the Agreement on Right Connection's behalf, the fiduciary-shield doctrine prohibits attribution of those corporate acts to Hughes. To the extent that Hughes participated in any of the conduct that Plaintiff asserts as grounds for specific jurisdiction over Right Connection, the court concludes that this conduct does not establish specific jurisdiction over Hughes for the same reason that it did not establish specific jurisdiction over Right Connection.

---

[68]Plaintiff's Opposition, Docket Entry No. 14, p. 17.

The fiduciary-shield doctrine does not apply to intentional torts or fraudulent acts committed by a corporate officer or agent. Ponder Research Group, LLP v. Aquatic Navigation, Inc., Civil Action No. 4:09-CV-322-Y, 2009 WL 2868456, at *7 (N.D. Tex. Sept. 4, 2009). "The thrust of the general rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the guiding spirit behind the wrongful conduct or the central figure in the challenged corporate activity." Mozingo v. Correct Manufacturing Corp., 752 F.2d 168, 174 (5th Cir. 1985) (internal quotations, citations, and ellipsis omitted).

Plaintiff argues that the fiduciary-shield doctrine does not protect Hughes because Hughes "had direct personal participation in [Right Connection]'s improper conduct that has caused injury to Plaintiff[,]" in that Hughes "demanded Plaintiff's Marks for [Right Connection] in exchange for [Right Connection] and Hughes paying Plaintiff its share of profits from events . . . . purposefully copied and [used] Plaintiff's Marks for [Right Connection]'s own brand[,]" and "directed [Right Connection] to interfere and solicit Plaintiff's clients."[69]    Plaintiff cites its own Complaint to support these allegations, but does not cite any evidence in the record.[70]  It is not clear from Plaintiff's arguments how Plaintiff could know, for instance, that Hughes personally copied the

---

[69]Plaintiff's Opposition, Docket Entry No. 14, p. 18.

[70]Id.

Registered Mark or that Hughes personally directed Right Connection to solicit Plaintiff's clients. The court concludes that these conclusory allegations do not support exercising jurisdiction over Hughes. See Panda Brandywine Corp., 253 F.3d at 869. For all of these reasons the court concludes that Plaintiff has not met its burden to establish that the court has specific jurisdiction over Hughes.

### e. No Pendent Jurisdiction

Plaintiff argues that the court has pendent jurisdiction over all of its claims.[71]

> Pendent personal jurisdiction . . . exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim.

Rolls-Royce Corp. v. Heros, Inc., 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008). Because the court does not have personal jurisdiction over either Defendant as to any of Plaintiff's claims, it cannot assert pendent personal jurisdiction over any of Plaintiff's claims. It is therefore not necessary to inquire whether the claims arise out of a common nucleus of operative fact.

### III. Improper Venue and Plaintiff's Request for Transfer

Defendants argue that this case must be dismissed because neither Right Connection nor Hughes is subject to venue in this

---

[71]Id. at 15.

judicial district.[72] Plaintiff argues in its Complaint that "[v]enue is proper in this judicial district because Defendant is subject to the Court's personal jurisdiction pursuant to 28 U.S.C. § 1391(b)."[73] In its memorandum of opposition, Plaintiff again argues that venue is proper in the Southern District because "this Court has personal jurisdiction over defendants . . . ."[74]

28 U.S.C. § 1391(b) provides:

A civil action may be brought in —

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Plaintiff does not specify whether it is asserting that venue is proper under § 1391(b)(1), (2), or (3); but based on Plaintiff's repeated insistence that venue is proper because the court has personal jurisdiction over Defendants, the court assumes that Defendant is relying on § 1391(b)(3). But venue is not proper

---

[72]Defendants' Memo, attached to Defendants' Motion to Dismiss, Docket Entry No. 13-1, p. 28.

[73]Complaint, Docket Entry No. 1, p. 2 ¶ 4.

[74]Plaintiff's Opposition, Docket Entry No. 14, p. 21.

under § 1391(b)(3) because, for reasons explained above, the court does not have personal jurisdiction over Defendants. The court concludes that venue is improper in the Southern District of Texas.

Plaintiff has requested that, should the court find that it lacks personal jurisdiction or that venue is improper, the court transfer this action to Arizona.[75]

> Where a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2). In the alternative, a federal court is authorized under 28 U.S.C. § 1406(a) to transfer the action to 'any district or division in which it could have been brought' if the court finds that it is 'in the interest of justice' to transfer the action.

Herman v. Cataphora, Inc., 730 F.3d 460, 466 (5th Cir. 2013). District courts have broad discretion in deciding whether to order a transfer. In re Volkswagen of America, Inc., 545 F.3d 304, 311 (5th Cir. 2008).

Plaintiff argues that it would be in the interest of justice to transfer this matter to Arizona because Hughes resides in Arizona and because Arizona is "arguably" Right Connection's principal place of business.[76] Defendants dispute that Right Connection is "at home" in Arizona and assert that it does not have its principal place of business in Arizona.[77] The court will therefore dismiss rather than transfer the action.

---

[75]Plaintiff's Opposition, Docket Entry No. 14, p. 21.

[76]Plaintiff's Opposition, Docket Entry No. 14, p. 22.

[77]Defendants' Reply, Docket Entry No. 16, p. 11.

## IV. Conclusions and Order

For the reasons explained above, the court concludes that Plaintiff has failed to meet its burden of establishing facts capable of supporting the court's exercise of personal jurisdiction over Defendants. For the same reasons, venue is not proper in this district. Accordingly, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue (Docket Entry No. 13) is **GRANTED**, and this action will be dismissed without prejudice.

**SIGNED** at Houston, Texas, on this the 2nd day of July, 2021.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE